No. 52,450

STATE OF KANSAS, *Appellee,* v. KATHLEEN R. COBB, *Appellant.*

(625 P.2d 1133)

Opinion filed March 25, 1981.

*Sally Davis Pokorny,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, were with her on the brief for the appellee.

*Camille Nohe,* of Topeka, argued the cause and was on the brief for the appellant.

The opinion of the court was delivered by

HERD, J.: Kathleen Cobb appeals her jury conviction of first degree murder. K.S.A. 21-3401. Prior to trial, Cobb pled guilty to unlawful possession of a firearm. K.S.A. 21-4204(1)(*b*). Defendant was sentenced to life for the murder conviction and one (1) to ten (10) years for possession of the firearm. The sentences were ordered to run concurrently.

Kathleen Cobb had a good friend named Henry Davis. She had known him about five years. Their friendship was characterized as a comfortable brother-sister relationship conducive to discussion of personal problems. Outwardly Mr. Davis appeared easygoing but inwardly he harbored a dark, depressed, foreboding facet to his personality. On February 25, 1980, Miss Cobb drove from Topeka to Lawrence to visit Davis. Upon meeting with Henry Davis that day, Kathleen was confronted by the dark side of Davis's psyche. He told her he had had a vision he would suffer a serious, painful injury in an automobile accident requiring a prolonged stay in the hospital ultimately resulting in his death. Davis confided to Cobb he feared a slow painful death and he wanted her to find a gun, put it point-blank to his head and blow his head off. Defendant was shocked and frightened by Davis's obviously serious request and she refused to comply.

Henry Davis, according to defendant's testimony, then changed his tactics and told her he would inject two grams of cocaine and die from an overdose. He wrote a suicide note and

asked Kathleen to be with him when he died. Kathleen agreed to this request.

Two days later, defendant and her roommate, Ramona Moon, went to Lawrence to visit Davis. The young women tried to talk Davis out of his resolution to kill himself. They offered to let him live with them at no cost to him. But Davis was firm in his resolve and he renewed his request for Kathleen to be with him when he died. She assured him she would be there.

The three of them made two trips to a house in Lawrence. Davis entered the house alone both times. After the second trip Davis said, "Well, I got it. Let's go back to John's." Miss Cobb assumed he meant he had obtained the cocaine. Davis then obtained the drug paraphernalia and a gun, which he put in his boot. The three of them then drove silently to Topeka, except for a stop when Miss Moon became hysterical.

When they arrived in Topeka, Ramona Moon was let out at her apartment. Defendant entered the apartment and obtained a small bottle of water to mix with the cocaine. She returned to the car and she drove Henry in her car, to a country road outside Topeka. Defendant stopped the car and Davis prepared a small dose of cocaine and inserted the needle of the syringe into his left arm. While he held his arm, defendant pushed the plunger.

They then drove further down the road and stopped again at Davis's request. There they talked for awhile. Henry told Kathleen he loved her and that he was sorry. According to Cobb's testimony:

"He then told me that he loved me again very much and he hoped that I'd find the strength to do whatever I had to do; and at that point, he made reference to me using the gun if the cocaine did not kill him. He requested specifically that if the drug did not kill him that I was to use the gun and that he wanted me to make sure he was dead before I left him."

Davis unlatched the car door on the passenger side, injected the needle in his right arm and defendant again pushed the plunger. The syringe contained a larger dose of cocaine this time. Davis immediately went into convulsions and fell out of the car. He convulsed intermittently for 15 or 20 minutes. His breathing gurgled much as a drowning person and it halted for longer and longer periods of time. He was rigid. His body was shaking and his teeth were grinding. Defendant became very disturbed. She screamed and hoped Davis would die without further suffering. Defendant testified she was thinking, "Henry, why don't you die

because I don't want to have to shoot you. I want you to die of a drug overdose because that's what you wanted." Consistent with an earlier agreement with Davis, defendant reached down and removed his ring. She said she thought about using a rock to kill him. She tried to suffocate him by holding his nose but gave up when his breath condensed on her hand. Again she put her hand in front of his nose and this time she could feel no breathing. She listened for a heartbeat and found none. She stated she could not tell whether he was alive or dead.

Finally, Kathleen Cobb testified: "I then got the gun, and I felt for his left temple, and I put the gun to his head, and I looked up to my right to the sky and screamed: 'God, please forgive me,' and I pulled the trigger, and then I got in the car and left." She threw the gun and drug paraphernalia out of the car and drove to her apartment.

The next day defendant and her roommate drove out to the scene to look for the drug equipment and the gun. They found the gun and were stopped by a police roadblock at the location of Davis's body and identified themselves to the police at that time. Kathleen Cobb later identified Davis's body and gave the police a statement admitting she shot him. A suicide note in Davis's handwriting was found in Davis's residence in Lawrence.

An autopsy was performed on Davis's body and a toxicology test showed a level of 13.5 micrograms of cocaine per deciliter of blood. A bullet wound was found in the left temple, accompanied by hemorrhaging in the soft tissue around the bullet wound with fractures of the skull radiating out of the bullet wound as well as fractures of the bones above the eye. There were needle punctures in the flexure of both elbows and marked congestion of the lungs. Dr. Antonio Huaman, district coroner, conducted the autopsy and testified that Henry Davis died from a bullet wound to the head. Due to the amount of hemorrhaging, it was his opinion Davis was alive at the time the bullet entered his head, even though the cocaine level found in the blood was within the fatal range. This testimony was uncontroverted. Kathleen Cobb's defense was that she was assisting a suicide and she had no malice. The jury disregarded her defense and convicted her of first-degree murder.

Defendant argues the trial court erred in refusing to give an instruction on assisting a suicide either as a lesser included offense of murder in the first degree or as a theory of defense.

Defendant proposed the following instructions:

Defendant's Proposed Instruction No. 1

"If you cannot agree that the Defendant is guilty of murder in the first degree or murder in the second degree, then you shall consider if she is guilty of assisting suicide.

"To establish the charge of assisting suicide, each of the following claims must be proved:

"1) That the Defendant intentionally advised, encouraged or assisted Henry Davis in the taking of his own life; and

"2) That this act occurred on the 27th day of February, 1980, in Shawnee County, Kansas."

Defendant's Proposed Instruction No. 2

"If you find that the Defendant's actions constituted only assisting Henry Davis in the taking of his own life, you must find the Defendant not guilty of murder in the first degree or murder in the second degree."

Assisting suicide is defined in K.S.A. 21-3406 as:

"intentionally advising, encouraging or assisting another in the taking of his own life."

This statute has never been construed by Kansas courts.

Lesser included offenses of murder in the first degree are murder in the second degree (K.S.A. 21-3402), voluntary manslaughter (K.S.A. 21-3403) and involuntary manslaughter (K.S.A. 1980 Supp. 21-3404). *State v. Seelke,* 221 Kan. 672, 675, 561 P.2d 869 (1977). See generally *State v. Carpenter,* 228 Kan. 115, 612 P.2d 163 (1980). "The trial court is required to instruct on a lesser included crime only when there is evidence under which a defendant might reasonably have been convicted of the lesser crime." *State v. Patchett,* 229 Kan. 163, Syl. ¶ 4, 621 P.2d 1011 (1981).

We have examined the crime of assisting a suicide discussed in the following cases cited by defendant: *State v. Webb,* 216 Mo. 378, 115 S.W. 998 (1909); *People v. Matlock,* 51 Cal. 2d 682, 336 P.2d 505 (1959); *State v. Bouse,* 199 Or. 676, 264 P.2d 800 (1953); *People v. Kent,* 41 Misc. 191, 83 N.Y.S. 948 (1903); *The State v. Ludwig,* 70 Mo. 412 (1879); and we find no evidence to support the giving of an instruction on assisting a suicide because there is no evidence a suicide occurred.

Suicide is: "Self-destruction; the deliberate termination of one's existence." Black's Law Dictionary 1286 (5th ed. 1979).

There is no evidence in this case to support suicide and without a suicide there can be no "assisting a suicide." It was the hand of

Kathleen Cobb which pushed the plunger on the cocaine syringe both times and it was Kathleen Cobb who picked up the pistol, found Davis's temple and pulled the trigger. Davis did not destroy himself. It is possible Davis may have assisted Cobb in destroying himself, but the actual destruction was performed by Kathleen Cobb. In *State v. Bouse,* 199 Or. 676, a jury convicted the defendant of first-degree murder for drowning his wife in the bathtub. Defendant argued the decedent wished to commit suicide and he merely assisted her. The conviction was overturned by the Oregon Supreme Court because of trial errors. In its discussion of Oregon's assisting suicide statute, the court stated:

"[T]he statute does not contemplate active participation by one in the overt act directly causing death. It contemplates some participation in the events leading up to the commission of the final overt act, such as furnishing the means for bringing about death,—the gun, the knife, the poison, or providing the water, for the use of the person who himself commits the act of self-murder. But where a person actually performs, or actively assists in performing, the overt act resulting in death, such as shooting or stabbing the victim, administering the poison, or holding one under water until death takes place by drowning, his act constitutes murder, . . ." *State v. Bouse,* 199 Or. at 703.

That interpretation is directly applicable to this case. Kathleen Cobb was an active participant in the overt act of shooting Henry Davis, which caused his death. There was no suicide and therefore there is no evidence to support an instruction on assisting a suicide.

Finally, defendant contends the trial court erred in refusing to give the following instruction defining "malice":

"Maliciously means willfully doing a wrongful act without just cause or excuse.

"Malice comprehends that the wrongful act from which death ensued be occasioned by some degree of deliberation, wickedness of disposition, and evil design in general, the dictate of heart regardless of social duty and fatally bent mischief, as characterized by an intent to do great bodily harm.

"Malice refers to the state of mind and heart of the defendant, which actually existed at the time of the doing of the act from which death resulted."

The trial court gave an instruction on malice, taken, in part, from PIK Criminal 56.04:

"Maliciously means wilfully doing a wrongful act without just cause or excuse. It requires the absence of any circumstance of justification, mitigation or excuse."

PIK Criminal 56.04 has been approved in the following cases:

*State v. Childers,* 222 Kan. 32, 563 P.2d 999 (1977); *State v. Wilson,* 215 Kan. 437, 524 P.2d 224 (1974). Without referring to the instruction itself, the definition of malice expressed in PIK Criminal 56.04 was approved in *State v. Dunnan,* 223 Kan. 428, 573 P.2d 1068 (1978). Defendant's proposed instruction as well as the definition of malice in PIK Criminal 56.04 were taken from *State v. Jensen,* 197 Kan. 427, Syl. ¶ 5, 417 P.2d 273 (1966). The discussion of malice evidenced by "wickedness of disposition, an evil design in general . . ." was applied to the facts in a case involving a homicide committed on a highway as a result of reckless operation of a motor vehicle. *Jensen* is distinguishable from the present situation which involves a deliberate killing where malice may be inferred from the use of a dangerous weapon. *State v. Shultz,* 225 Kan. 135, 587 P.2d 901 (1978); *State v. Dunnan,* 223 Kan. 428; *State v. Ritchey,* 223 Kan. 99, 573 P.2d 973 (1977). The instruction taken from PIK Criminal 56.04 was proper.

The judgment of the trial court is affirmed.