#25496-a-SLZ

**2011 S.D. 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

ROBERT GOULDING,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MERTON B. TICE, JR.
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

TED L. MCBRIDE
Assistant Attorney General                    Attorneys for plaintiff
Pierre, South Dakota                    and appellee.

TIMOTHY J. RENSCH of
Rensch Law Office                    Attorneys for defendant
Rapid City, South Dakota                    and appellant.

\* \* \* \*

ARGUED ON MARCH 22, 2011

OPINION FILED **06/15/11**

#25496

ZINTER, Justice

[¶1.]          Allen Kissner wanted to die and had failed in an attempt to take his own life.  Kissner subsequently asked Robert Goulding to take Kissner's life with a gun.  Goulding agreed.  He fatally shot Kissner and was convicted of first degree murder.  Goulding now appeals his conviction arguing that the circuit court erred in precluding him from presenting a defense that the shooting constituted assisted suicide rather than murder.  We affirm the conviction.

*Facts and Procedural History*

[¶2.]          Kissner wanted to die because he was likely returning to prison, he was addicted to drugs, and he was in chronic, terminal pain.  Kissner had failed in a recent attempt to take his own life, so he asked his friend, Goulding, to kill him with a gun.  The two men drove to a remote location, and at Kissner's request, Goulding put a gun in Kissner's ear and pulled the trigger causing Kissner's instantaneous death.  As he returned to his home, Goulding disposed of the gun and latex glove he used in the shooting.  Kissner's body was found the next day by fishermen.

[¶3.]          Goulding was charged with first degree murder.  He wanted to present a defense that he did not commit murder because he was guilty of assisted suicide.  The circuit court, however, precluded Goulding from mentioning the assisted suicide statute.  The court also precluded Goulding from arguing that assisted suicide was the only crime Goulding could have committed.  Over Goulding's objection, the court instructed the jury: "Suicide is the intentional taking of one's own life.  As a matter of law, it is not suicide when another person actually performs the overt act

resulting in the death of the decedent." Goulding was, however, permitted to establish that Kissner formulated the plan, took the preparatory steps, and requested Goulding to do the shooting. Goulding argued to the jury that under these facts, he was not guilty of murder. The jury found Goulding guilty of first degree murder.

[¶4.] Goulding advances three related arguments on appeal. He first contends that the court erred in instructing the jury that as a matter of law it was not suicide if a person other than the decedent performed the overt act resulting in the decedent's death. Goulding also contends that the court erred in refusing certain defense instructions that would have supported an alternative assisted suicide conviction by defining suicide, assisted suicide, and corpus delicti. Goulding finally contends that the court erred in prohibiting him from referring to the assisted suicide statute. We consider these contentions together because they are all predicated on Goulding's contention that the shooting constituted assisted suicide rather than first degree murder.

### Decision

[¶5.] The question is whether the assisted suicide statute applies when, at the decedent's request, a person other than the decedent commits the overt act causing the death of the decedent. Statutory interpretation and application are questions of law that we review de novo. *State v. Miranda*, 2009 S.D. 105, ¶ 14, 776 N.W.2d 77, 81.

[¶6.] Suicide is "the intentional taking of one's own life." SDCL 22-16-36.[1] Assisted suicide occurs when a person "intentionally in any manner advises, encourages, abets, or assists another person in taking or in attempting to take his or her own life." SDCL 22-16-37.[2] Goulding argues that because the assisted suicide statute refers to assistance "in any manner," the statute is broad enough to include an aider's overt act that directly causes the death of the decedent. We disagree.

[¶7.] The phrase "in any manner" modifies the phrase "advises, encourages, abets, or assists *another person* in taking or in attempting to take *his or her own life*." *Id.* (emphasis added). Therefore, the statute only applies when any manner of assistance is provided to another person in the other person's taking or attempting to take "his or her own life." *Id.* But in this case, Kissner, the "other person," did not take his own life. Kissner's life was taken by Goulding when Goulding shot Kissner. Therefore, there was no suicide, and "without a suicide there can be no 'assisting a suicide.'" *State v. Cobb*, 229 Kan. 522, 525, 625 P.2d 1133, 1136 (1981). We conclude that the assistance "in any manner" language of SDCL 22-16-37 does not contemplate a third party's overt act that directly causes the death of another person.

---

1. Since the 1883 Revised Codes of the Territory of Dakota, suicide has been defined as "the intentional taking of one's own life." 1883 Revised Codes of the Territory of Dakota, Penal Code § 228.

2. The assisted suicide statute remains mostly unchanged from its 1883 version, which read: "Every person who willfully, in any manner, advises, encourages, abets, or assists another person in taking his own life, is guilty of aiding suicide." 1883 Revised Codes of the Territory of Dakota, Penal Code § 231.

[¶8.] "Other jurisdictions, interpreting similarly worded statutes, have reached the same conclusion." *People v. Gordon*, 32 P.3d 575, 579 (Colo. App. 2001) (examining California and Texas). *See also People v. Minor*, 898 N.Y.S.2d 440, 442 (N.Y. Sup. Ct. 2010) ("Such [assisted suicide] statutes typically do 'not contemplate active participation by one in the overt act directly causing death,' and thus their existence is no barrier to a murder conviction in such circumstances.") (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 15.6(c), at 547 (2d ed. 2003) (quoting *State v. Bouse*, 199 Or. 676, 264 P.2d 800 (1953))); *State v. Sexson*, 117 N.M. 113, 116-17, 869 P.2d 301, 304-05 (1994) ("[T]he difference between murder and aiding suicide generally hinges upon whether the defendant *actively* participates in the overt act directly causing death, or whether he merely provides the means of committing suicide. . . . This rule applies even where the victim has given his consent or requested the actual assistance provided."). And even though Goulding points out that other state statutes do not contain the assistance "in any manner" language, the other statutes' "another" person language makes them indistinguishable.[3] As the court in *Gordon* explained, the language "aid[ing] another to commit suicide" evidences "a clear and unambiguous intent to penalize

---

3.     *See, e.g., People v. Matlock*, 51 Cal.2d 682, 693, 336 P.2d 505 (1959) (interpreting "deliberately aids, or advises, or encourages another to commit suicide"); *Gordon*, 32 P.3d at 578-79 (interpreting "aids another to commit suicide"); *Cobb*, 229 Kan. at 525, 625 P.2d at 1135 (interpreting "intentionally advising, encouraging or assisting another in the taking of his own life"); *Sexson*, 117 N.M. at 115, 869 P.2d at 303 (interpreting "deliberately aiding another in the taking of his own life"); *Minor*, 898 N.Y.S.2d at 443 (interpreting "causes or aids another person to commit suicide"); *Goodin v. State*, 726 S.W.2d 956, 958 (Tex. App. 1987) (interpreting "aids or attempts to aid the other to commit or attempt to commit suicide"), *aff'd en banc*, 750 S.W.2d 789 (Tex. Crim. App. 1988).

only persons who provide indirect types of aid or assistance to others who then go forward and kill themselves." 32 P.3d at 578-79. "It is well accepted that aiding, in the context of determining whether one is criminally liable for their involvement in the suicide of another, is intended to mean providing the means to commit suicide, not actively performing the act which results in death." *Id.* at 579.

[¶9.]        *Cobb*, 229 Kan. 522, 625 P.2d 1133, confirmed this consensus conclusion in a factually analogous case. Kathleen Cobb, at the request of the decedent, injected him with a fatal dose of cocaine and shot him in the head. Assisted suicide was defined as "intentionally advising, encouraging or assisting another in the taking of his own life." *Id.* at 525, 625 P.2d at 1135 (quoting Kan. Stat. Ann. § 21-3406). The Kansas court adopted the often-quoted language of the Oregon Supreme Court on this issue:

> [T]he statute does not contemplate active participation by one in the overt act directly causing death. It contemplates some participation in the events leading up to the commission of the final overt act, such as furnishing the means for bringing about death, the gun, the knife, the poison, or providing the water, for the use of the person who himself commits the act of self-murder. But where a person actually performs, or actively assists in performing, the overt act resulting in death, such as shooting or stabbing the victim, . . . his act constitutes murder[.]

*Id.* at 526, 625 P.2d at 1136 (quoting *Bouse*, 199 Or. at 703, 264 P.2d at 812). The Kansas court concluded that there is no basis for an assisted suicide defense under this type of factual scenario: "It was Kathleen Cobb who picked up the pistol, found [the decedent's] temple and pulled the trigger." *Id.* "[The decedent] did not destroy himself. It is possible [the decedent] may have assisted Cobb in destroying himself, but the actual destruction was performed by Kathleen Cobb." *Id.* This same analysis applies to Goulding.

[¶10.]     Goulding, however, argues that these authorities do not apply because they did not consider the language of SDCL 22-16-2, which defines corpus delicti. SDCL 22-16-2 provides: "No person may be convicted of murder or manslaughter, or of *aiding suicide,* unless the death of the person alleged to have been killed, and the fact of the *killing by the accused* are each established as independent facts beyond a reasonable doubt." (Emphasis added.)  Goulding contends that because the corpus delicti statute requires proof of the fact of a "killing by the accused" and he is the accused, his killing constituted assisted suicide.  We disagree with this application of the corpus delicti statute.

[¶11.]     A common element of suicide and assisted suicide is the requirement that the decedent take his or her own life.  SDCL 22-16-36; SDCL 22-16-37.  If the "killing by the accused" language in the corpus delicti statute were intended to change assisted suicide to require a killing by the accused instead of a killing by the decedent, the self-killing element of assisted suicide would be abrogated.  That change would render SDCL 22-16-37 meaningless because assisted suicide would then apply to third-party killings but not to preparatory assistance provided by an accused in another person's self-killing.  Moreover, if the corpus delicti statute were intended to alter the elements of the assisted suicide statute, the corpus delicti statute would also alter the elements of all other offenses referenced in SDCL 22-16-2; i.e., murder and manslaughter.  And, adding a "killing by the accused" element to murder and manslaughter offenses would in turn render felony murder (SDCL 22-16-15) and aiding and abetting murder and manslaughter (SDCL 22-3-3, 22-16-4, 22-16-7, 22-16-15, 22-16-20) meaningless because those offenses specifically

contemplate that the direct act of the killing occur by the hand of someone other than the accused. The Legislature could not have intended such absurd results.

[¶12.] Goulding's argument presents a case of conflict between the corpus delicti and assisted suicide statutes. "Where conflicting statutes appear, it is the responsibility of the court to give reasonable construction to both, and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable." *Meyerink v. Nw. Pub. Serv. Co.*, 391 N.W.2d 180 (S.D. 1986). Construing these statutes together to make them harmonious and workable, we conclude that the corpus delicti statute was not intended to redefine the statutory elements of the underlying offenses referenced in that statute. Instead, the concept of corpus delicti is intended to reduce the chance of punishing a defendant for a crime that was never in fact committed. 1 Wayne R. LaFave, Substantive Criminal Law § 1.4(b), at 29 (2d ed. 2003). It does so by requiring proof of a killing by "independent facts." SDCL 22-16-2.

[¶13.] "The corpus delicti rule was first developed more than three hundred years ago in England to prevent the conviction of those who confessed to non-existent crimes as a result of coercion or mental illness." David A. Moran, *In Defense of the Corpus Delicti Rule*, 64 Ohio St. L.J. 817, 817 (2003). The Supreme Court has confirmed this purpose of the rule:

> Its purpose is to prevent 'errors in convictions based upon untrue confessions alone' . . . ; its foundation lies in a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused.

*Smith v. United States*, 348 U.S. 147, 152-53, 75 S. Ct. 194, 197, 99 L. Ed. 192 (1954) (quoting *Warszower v. United States*, 312 U.S. 342, 347, 61 S. Ct. 603, 606, 85

L. Ed. 876 (1941)).  Thus, "[i]n the United States, the prisoner's confession, when the *corpus delicti* is not otherwise proved, has been held insufficient for his conviction[.]"  1 Simon Greenleaf, A Treatise on the Law of Evidence § 217, at 279 (14th ed. 1883).

[¶14.]     South Dakota follows this view in applying SDCL 22-16-2.  "Corpus delicti means the body or substance of the crime and may be defined in its primary sense as the fact that the crime charged has actually been committed by someone." *State v. Bates*, 76 S.D. 23, 27-28, 71 N.W.2d 641, 644 (1955).  The rule requires evidence corroborating an accused's admission through independent proof showing "(1) the fact of an injury or loss, and (2) the fact of someone's criminal responsibility for the injury or loss."  *State v. Thompson*, 1997 S.D. 15, ¶ 36, 560 N.W.2d 535, 543. "[T]here must be 'such extrinsic corroborating or supplemental circumstances as will, when taken in connection with the [accused's] admissions, establish beyond a reasonable doubt that the crime was in fact committed by someone.'"  *Id.* (quoting *Bates*, 76 S.D. at 28, 71 N.W.2d at 644).  "The evidence of corpus delicti, independent of the extrajudicial admissions of the accused, satisfies the rule requiring corroboration [of an accused's admission] if it is sufficient to convince the jury that the crime charged is real and not imaginary."  *Bates*, 76 S.D. at 29, 71 N.W.2d at 644.  Thus, the corpus delicti statute is an evidentiary requirement governing when a case may be submitted to a jury.  *See id.* at 27-28, 71 N.W.2d at 644 (considering whether there was sufficient evidence to justify submission of the case to the jury); *State v. Dean*, 65 S.D. 433, 434-36, 274 N.W. 817, 818-19 (1937) (concluding that the State introduced sufficient evidence to comply with the corpus

delicti statute). It has also been used as an evidentiary prerequisite to introduction of a defendant's admissions. *State v. Best*, 89 S.D. 227, 235-37, 232 N.W.2d 447, 452-53 (1975) (stating that "introduction of defendant's incriminating admissions [is] proper if supported by [independent] evidence of the corpus delicti").

[¶15.] We conclude that SDCL 22-16-2 was only intended as an evidentiary requirement to establish "independent facts," *see id.*, to warrant the introduction of extrajudicial statements of an accused or the submission of a case to a jury. It was not intended to add new substantive elements that supplant the statutory elements of the underlying offenses. Therefore, SDCL 22-16-2 does not incorporate into SDCL 22-16-37 a new element of a "killing by the accused" such that an accused third party can commit assisted suicide by an overt act that directly causes the death of another. Because a "killing by the accused" is not an element of assisted suicide, and because there is no dispute that Goulding committed the overt act that directly caused Kissner's death, Goulding could not have committed assisted suicide. The circuit court correctly precluded Goulding from presenting a defense that his shooting constituted assisted suicide rather than murder.

[¶16.] Affirmed.

[¶17.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.