#30207-a-SRJ
**2024 S.D. 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ORTHOPEDIC INSTITUTE, P.C.;
SIOUX FALLS SPECIALTY HOSPITAL,
LLP; SIOUX FALLS SPECIALTY
HOSPITAL, LLP d/b/a SIOUX FALLS
URGENT CARE; SIOUX FALLS
SPECIALTY HOSPITAL, LLP d/b/a
WORKFORCE OCCUPATIONAL HEALTH
AND MEDICAL SERVICES; SIOUX FALLS
SPECIALTY HOSPITAL, LLP d/b/a
MIDWEST PAIN SPECIALISTS; SIOUX
FALLS SPECIALTY HOSPITAL, LLP d/b/a
MIDWEST IMAGING; OPHTHALMOLOGY
LTD, INC.; and OPHTHALMOLOGY LTD,
EYE SURGERY CENTER, LLC,                      Plaintiffs and Appellees,

    v.

SANFORD HEALTH PLAN, INC.,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RACHEL R. RASMUSSEN
Judge

* * * *

ARGUED
AUGUST 30, 2023
OPINION FILED **02/07/24**

* * * *

MARK W. HAIGH
DELIA M. DRULEY of
Evans, Haigh & Arndt, LLP
Sioux Falls, South Dakota

MARTIN S. CHESTER
KATE E. MIDDLETON
JOSIAH D. YOUNG of
Faegre, Drinker, Biddle
   & Reath, LLP
Minneapolis, Minnesota          Attorneys for defendant and
                                        appellant.

ANDREW DAMGAARD
JORDAN J. FEIST of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota       Attorneys for plaintiffs and
                                        appellees.

#30207

JENSEN, Chief Justice

[¶1.] Several physician groups and health care facilities (Providers) sought a declaratory judgment establishing their right to participate as panel providers in each of the health benefit plans offered by Sanford Health Plan, Inc. (SHP), pursuant to the "Any Willing Provider" law found in SDCL 58-17J-2. Providers and SHP filed cross-motions for summary judgment asking the circuit court to interpret the application of SDCL 58-17J-2. The circuit court granted Providers' motion for summary judgment and denied SHP's motion. The court determined that SDCL 58-17J-2 does not permit SHP to exclude a fully qualified and willing health care provider from participating as a panel provider in every health benefit plan offered by SHP. We affirm.

**Factual and Procedural Background**

[¶2.] Providers are comprised of health care professionals licensed by the State Boards of Medical and Osteopathic Examiners, Optometry, or Nursing. Each health care professional employed by Providers is board certified within each of their specialties. Additionally, each medical facility is licensed by the South Dakota Department of Health.

[¶3.] SHP is a taxable, non-profit corporation with its principal place of business in Sioux Falls. SHP is a wholly owned subsidiary of Sanford Health, a South Dakota health care system headquartered in Sioux Falls. SHP has been authorized by the South Dakota Division of Insurance to provide health benefit plans to South Dakota residents.

[¶4.]     SHP currently offers its insureds four primary health benefit plans: Simplicity Plan, Signature Series Plan, Sanford TRUE Plan, and Sanford PLUS Plan. These plans are offered to individuals, as well as large and small employer groups. While some of SHP's plans include its entire panel of providers, others include a smaller sub-panel of providers. Plans that do not include SHP's entire panel of providers are identified as "focused" plans, while those that include SHP's entire panel of providers are known as "broad" plans.[1] SHP represents that it requires prospective insureds to be given the choice between a broad plan and a focused plan prior to selecting a health benefit plan.

[¶5.]     The Sanford Simplicity Plan is offered to individuals and small employers (50 or less employees) while the Signature Series Plan is offered to large employers (50 or more employees). These broad plans provide insureds with the largest number of panel providers. The Providers are panel providers within the Sanford Simplicity and Signature Series plans.

[¶6.]     The TRUE Plan is a focused plan offered to both large and small employers as well as individuals. The TRUE Plan's panel of providers consists primarily of Sanford Health providers as well as other providers necessary to meet network adequacy requirements. The TRUE Plan provides no health insurance benefits to insureds who receive non-emergency care from non-panel providers. Thus, an insured covered by the TRUE Plan must pay the entire cost of medical care received by a non-panel TRUE Plan provider. Providers are non-panel

---

1.     SHP's broad plans include some 25,000 health care providers. In contrast, there are as few as 2,500 providers within its TRUE Plan, the smallest "focused" plan.

providers under the TRUE Plan and claim to have turned away TRUE Plan insureds who are unable to afford the entire cost of health care received by a non-panel provider.

[¶7.] The PLUS Plan, offered to large employers, includes SHP's entire panel of providers, however, the plan divides providers into two tiers. Tier 1 is closely related to the panel of providers offered in the TRUE Plan, comprised primarily of Sanford Health providers and facilities. Care received from Tier 1 providers results in the lowest out-of-pocket cost for the insured. Tier 2 has a broader panel of health care providers that expands beyond the Sanford Health system and has higher out-of-pocket costs for the insured. Providers are Tier 2 providers under the PLUS Plan.

[¶8.] Providers claim they are fully qualified under SDCL 58-17J-2 and willing to meet SHP's terms and conditions to participate as panel providers in the TRUE Plan, and as Tier 1 providers in the PLUS Plan. Prior to commencing this action, Providers requested to participate as panel providers for both plans. SHP denied Providers' requests, maintaining that the focused plans allow insureds to choose a less expensive health care plan as a tradeoff for a narrower choice of health care providers.

[¶9.] In response to SHP's denial, Providers filed suit on September 21, 2021, seeking a declaratory judgment pursuant to SDCL 58-17J-2 to allow Providers to participate as panel providers in the True Plans, and as Tier 1 panel providers in the PLUS plan. Providers filed a motion for summary judgment alleging that there was no genuine dispute as to any material fact relating to the

application of SDCL 58-17J-2 and that SHP may not exclude them from participating as panel providers in the TRUE Plans and Tier 1 of the PLUS Plan. SHP filed an opposition to Providers' motion for summary judgment as well as a cross-motion for summary judgment alleging Providers lacked standing to assert a declaratory judgment claim under SDCL 58-17J-2. In its cross-motion for summary judgment, SHP alleged that it complied with the statute by offering prospective insureds a choice between plans that include a broad panel of providers and a focused panel of providers.

[¶10.] The circuit court issued a memorandum opinion and order granting Providers' motion for summary judgment and denying SHP's motion. The circuit court held that Providers have standing to bring their suit,[2] and determined that SDCL 58-17J-2 does not "allow a health insurer to exclude a health care provider from a health benefit plan's panel of providers who is (1) licensed under the laws of South Dakota; (2) located within the geographic coverage area of the health benefit plan; and (3) willing and fully qualified to meet the terms and conditions of participation as established by the health insurer."

[¶11.] SHP filed a notice of appeal, raising two issues:

1. Whether SDCL 58-17J-2 allows a health insurer to exclude a provider from participating as a panel provider in a health benefits plan for any reason other than those included within the statute.

2. Whether the circuit court erred in concluding there was no genuine dispute of material fact precluding entry of summary judgment in favor of Providers.

---

2. SHP has not appealed the circuit court's standing determination.

## Standard of Review

[¶12.]     This Court has routinely held that "[s]tatutory interpretation and application are questions of law that we review de novo." *Krsnak v. S.D. Dep't of Env't and Nat. Res.*, 2012 S.D. 89, ¶ 8, 824 N.W.2d 429, 433 (alteration in original) (quoting *State v. Goulding*, 2011 S.D. 25, ¶ 5, 799 N.W.2d 412, 414). "We review a circuit court's entry of summary judgment under the de novo standard of review." *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700 (citation omitted). Our rules for reviewing the entry of summary judgment under SDCL 15-6-56(c) are well settled:

> Summary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will affirm only when no genuine issues of material fact exist and the law was applied correctly. We make all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. In addition, the moving party has the burden of clearly demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Garrido v. Team Auto Sales, Inc.*, 2018 S.D. 41, ¶ 15, 913 N.W.2d 95, 100 (quoting *McKie Ford Lincoln, Inc. v. Hanna*, 2018 S.D. 14, ¶ 8, 907 N.W.2d 795, 798).

## Analysis

### 1.     *South Dakota's Any Willing Provider Law.*

[¶13.]     In 2014, South Dakota voters approved Initiated Measure 17, also referred to as the State's "Any Willing Provider Law". 2015 S.D. Sess. Laws ch. 278, § 1. Initiated Measure 17 is codified at SDCL 58-17J-2. The purpose of the statute is to secure patient choice in the selection of health care, and provides:

No health insurer, including the South Dakota Medicaid program, may obstruct patient choice by excluding a health care provider licensed under the laws of this state from participating on the health insurer's panel of providers if the provider is located within the geographic coverage area of the health benefit plan and is willing and fully qualified to meet the terms and conditions of participation as established by the health insurer.

[¶14.] SHP argues that SDCL 58-17J-2 does not require a health insurer to include any "willing and fully qualified" health care provider in every plan it offers as long as insureds have the ability to choose a broad plan that includes the insurers' entire panel of providers. SHP highlights that it offers both focused and broad plans to insureds prior to selecting a plan, giving them the choice to select a plan that includes every willing and fully qualified provider within SHP's panel of providers. SHP argues it complies with SDCL 58-17J-2 because it accepts any willing and fully qualified provider into its overall panel of providers, creates plans with both broad and focused panels of providers, and affords insureds a choice between focused and broad plans. In other words, SHP contends that the statute is "insurer specific" rather than "plan specific." SHP also argues that the circuit court's plan-specific reading of SDCL 58-17J-2 would implicitly repeal or nullify several statutory provisions by making both closed and tiered plans illegal.

[¶15.] In contrast, Providers argue, consistent with the circuit court's reading of the statute, that SDCL 58-17J-2 is plan-specific. In their view, if a provider is willing and fully qualified, an insurer may not exclude the provider from any plan offered by the health insurer. Providers maintain that an insurer may only exclude a willing provider from participating in a plan based upon the criteria established in the statute.

[¶16.]     "The purpose of statutory interpretation is to discover legislative intent." *State v. Bryant*, 2020 S.D. 49, ¶ 20, 948 N.W.2d 333, 338 (quoting *State v. Mundy-Geidd*, 2014 S.D. 96, ¶ 5, 857 N.W.2d 880, 883). "[T]he starting point when interpreting a statute must always be the language itself." *Id.* (alteration in original) (quoting *State v. Livingood*, 2018 S.D. 83, ¶ 31, 921 N.W.2d 492, 499). This Court "give[s] words their plain meaning and effect, and read[s] statutes as a whole." *Id.* (quoting *Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶ 8, 932 N.W.2d 135, 138). Lastly, "[w]hen the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *State v. Bettelyoun*, 2022 S.D. 14, ¶ 24, 972 N.W.2d 124, 131 (quoting *State v. Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d 9, 13).

[¶17.]     The plain language of SDCL 58-17J-2 prohibits an insurer from "excluding a health care provider licensed under the laws of this state from participating on the health insurer's panel of providers if the provider is located within the geographic coverage area of the health benefit plan and is willing and fully qualified to meet the terms and conditions of participation as established by the health insurer." While the statutory prohibition is extended to health insurers, the language is plan-specific by providing that an insurer may not exclude any willing and fully qualified provider "located *within the geographic coverage area of*

*the health benefit plan....*"  *Id.*  (Emphasis added).  When reading the statute as a whole, a "health insurer's panel of providers" is specific to each individual plan.[3]

[¶18.]        SDCL 58-17J-2 clearly defines the grounds for which an insurer may exclude a provider from a health benefit plan's panel of providers.  These include providers who are not: (1) licensed under the laws of South Dakota; (2) located within the geographic coverage area of the plan; or (3) willing and fully qualified to meet the terms and conditions established by the health insurer.  SDCL 58-17J-2. Any other reason offered by an insurer for obstructing a health care provider from joining a particular plan is impermissible under SDCL 58-17J-2.[4]

[¶19.]        We also cannot accept SHP's argument that a plan-specific interpretation of SDCL 58-17J-2 will implicitly repeal or nullify several statutory provisions by making both closed and tiered plans illegal.  "Where conflicting statutes appear, it is the responsibility of the court to give a reasonable construction

---

3.      This reading of the statute is consistent with other interpretations of similarly written statutes.  *See Idaho Cardiology Assocs., P.A. v. Idaho Physicians Network, Inc.*, 108 P.3d 370, 374–75 (Idaho 2005) (stating that "the Idaho Legislature's primary purpose in enacting the any willing provider statute was to preserve, to the maximum extent possible, the right of a patient to select his own treatment provider, subject only to the provider's willingness and ability to comply with the basic requirements of the *managed care plan.*") (emphasis added).

4.      SHP in its briefs, and Avera Health Plans, Inc. in its amicus brief, assert policy concerns with a plan-specific reading of SDCL 58-17J-2.  They argue the circuit court's interpretation will increase health insurance premiums by requiring health insurers to maintain a broad panel of providers for every plan they offer.  However, policy and economic implications of the statute are not at play in our interpretation of the statute.  "[T]he Court's only function is to declare the meaning of the statute as clearly expressed."  *Bettelyoun*, 2022 S.D. 14, ¶ 24, 972 N.W.2d at 131 (quoting *Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d at 13).

to both, and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable." *In re Approval for Request for Amend. to Frawley Planned Unit Dev.*, 2002 S.D. 2, ¶ 17, 638 N.W.2d 552, 557 (quoting *Karlen v. Janklow*, 339 N.W.2d 322, 323 (S.D. 1983)). "Repeal by implication will be indulged only where there is a manifest and total repugnancy." *Id.* (quoting *Karlen*, 339 N.W.2d at 323). "If, by any reasonable construction, both acts can be reconciled, they should be." *Id.* (quoting *Karlen*, 339 N.W.2d at 323).

[¶20.]     Closed plans are defined several times throughout Title 58. *See* SDCL 58-17F-1(1); 58-17G-1(1); 58-17I-1(8); 58-18A-53(3). A "closed plan" is defined as:

> a managed care plan or health carrier that requires covered persons to use participating providers under the terms of the managed care plan or health carrier and does not provide any benefits for out-of-network services except for emergency services.

SDCL 58-17F-1(1); 58-17G-1(1); and 58-17I-1. Whereas a "closed panel plan" is defined as:

> a plan that provides health benefits to covered persons primarily in the form of services through a panel of providers that have contracted with or are employed by the plan and that excludes benefits for services provided by other providers, except in cases of emergency or referral by a panel member.

SDCL 58-18A-53(3). These definitions do not conflict with a plan-specific reading of SDCL 58-17J-2. For instance, insurers are still permitted by SDCL 58-17J-2 to exclude providers from plans if they do not meet the statutory requirements for participation as a panel provider. Closed plans remain closed according to their definitions because an insurer may still refuse to provide benefits to an insured

seeking non-emergency health-care from a provider who is not a willing and fully qualified provider within the meaning of SDCL 58-17J-2.

[¶21.]     Additionally, SDCL 58-17J-2 was passed by initiated measure on behalf of South Dakota residents. *See Brendtro v. Nelson*, 2006 S.D. 71, ¶ 29, 720 N.W.2d 670, 680 (quoting *Byre v. City of Chamberlain*, 362 N.W.2d 69, 79 (S.D. 1985)) ("The purpose of the initiative is not to curtail or limit legislative power to enact laws, but rather to compel enactment of measures desired by the people, and to empower the people, in the event the legislature fails to act, or enact such measures themselves."). In general, "the drafters who frame an initiative statute and the voters who enact it may be deemed to be aware of existing law." 42 Am. Jur. 2d *Initiative and Referendum* § 49 (2023). Furthermore, "[a]n initiative petition may amend existing law by repealing parts of recent legislation along with proposing new laws." *Id.* Therefore, even if there are other statutes potentially in conflict with SDCL 58-17J-2, the voters are presumed to have voted having knowledge of all relevant statutes, and possess the authority to impliedly repeal conflicting statutes.

[¶22.]     Providers' complaint sought a judicial declaration that SHP's TRUE and PLUS plans are inconsistent with SDCL 58-17J-2. We conclude that because the TRUE Plan excludes providers for reasons other than the three reasons identified in the statute, the TRUE Plan is inconsistent with SDCL 58-17J-2.

[¶23.]     In turning to the PLUS Plan, although SDCL 58-17J-2 does not specifically address excluding panel providers within tiers, the statute does unambiguously provide that a health insurer may not exclude "a health care

provider licensed under the laws of this state from participating on the health insurer's panel of providers if the provider is located within the geographic coverage area of the health benefit plan[.]" SDCL 58-17J-2. Just as an insurer may not exclude any willing and fully qualified provider from joining a plan, an insurer may not exclude such a provider from participating as a panel provider in any tier within a plan. Tier 1 of the PLUS Plan obstructs patient choice by excluding Providers for reasons other those permitted by the statute.[5] *See Northeast Ga. Cancer Care, LLC v. Blue Cross Blue Shield of Ga., Inc.*, 726 S.E.2d 714, 720 (Ga. Ct. App. 2012) (stating that although insurers are permitted to designate preferred providers within a plan, providers "meeting the statutorily defined criteria 'shall be given the opportunity to apply and to become a preferred provider,' and they cannot be discriminated against for the specified improper reasons.") (internal citations omitted).

[¶24.]       SDCL 58-17J-2 is a plan-specific statute. By its plain terms, SDCL 58-17J-2 does not permit SHP to exclude any statutorily qualified and willing health care provider from its plans or exclude those same providers from any tier within a plan.

---

5.      For example, an insured covered by the PLUS Plan could choose to receive care from a Tier 2 provider. However, due to financial barriers created by higher out-of-pocket costs for care received from a Tier 2 provider, the insured may be forced to stay with a Tier 1 provider.

### 2. The circuit court's summary judgment determination.

[¶25.]     SHP argues that the circuit court erred in determining there was "no genuine issue of material fact regarding [Providers'] qualifications and willingness to accept SHP's terms." SHP maintains that the "unrebutted evidence shows that the terms and conditions for participating in a health benefit plan are negotiated individually and vary between providers." As a result, it claims, reimbursement rates may differ between providers. SHP also points to the deposition testimony of Stan Gebhart, the corporate representative of a Provider, that he could not predict all the terms, conditions, and contract provisions that might arise in contract negotiations with SHP and that some of these could be "deal breakers".

[¶26.]     SHP agrees with the circuit court that Providers are "fully qualified" within the meaning of SDCL 58-17J-2. However, SHP claims that questions of fact remain as to whether Providers are "willing" within the meaning of the statute because Providers may not consent to the "terms and conditions of participation [in a particular plan] as established by [SHP]." This misapprehends the issues presented and resolved on summary judgment. In their complaint and motion for summary judgment, Providers sought a judicial declaration, pursuant to SDCL 58-17J-2, that they were entitled to participate as panel providers in each health care plan offered by SHP. This case does not concern the specific terms and conditions that SHP has offered Providers to participate in the TRUE plan and Tier 1 of the PLUS plan. SHP acknowledges it has not offered Providers an agreement with terms and conditions to participate in each plan. Instead, the dispute involves the interpretation of SDCL 58-17J-2 and whether SHP may exclude Providers from

their plans for reasons not set forth in this statute. As Providers alleged in their complaint, a "controversy exists between [Providers] and [SHP] with respect to the interpretation of SDCL 58-17J-1 and SDCL 58-17J-2."

[¶27.]   In ruling on the cross-motions for summary judgment, the circuit court recognized the possibility that a dispute may arise concerning the terms SHP offers Providers, stating that "[e]ven if there is a dispute between the parties about the specific terms and conditions of any one plan, such a dispute would not preclude summary judgment because it is not a material fact that would change the outcome of the court's interpretation of [SDCL 58-17J-2]." In ruling on the cross-motions for summary judgment, the court interpreted the statute and held that "South Dakota does not allow a health insurer to exclude a health care provider from a health benefit plan's panel of providers who is (1) licensed under the laws of South Dakota; (2) located within the geographic coverage area of the health benefit plan; and (3) willing and fully qualified to meet the terms and conditions of participation as established by the health insurer." We agree with the circuit court's resolution of the summary judgment motion. While Providers have generally stated their willingness to participate as panel providers in each of SHP's plans, the specific terms and conditions of any agreement allowing Providers to participate as panel providers was not presented to the circuit court.

[¶28.]   Furthermore, the record does not reflect that Providers have been offered specific terms and conditions to participate as a panel provider in the TRUE plan or Tier 1 of the Plus plan. Given SHP's refusal to consider Providers' requests to be included on each plan's panel of providers, any potential dispute concerning

the specific "terms and conditions of participation as established by the health insurer" is not appropriate for resolution at this time. *See MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 14, 871 N.W.2d 617, 623 (quoting *Boever v. S.D. Bd. of Acct.*, 526 N.W.2d 747, 750 (S.D. 1995) ("A matter is sufficiently ripe if the facts indicate imminent conflict."). An issue that is dependent upon "the future occurrence of conduct and events that [are] uncertain and unknown" present no real controversy and are thus not ripe for review. *See Boever*, 526 N.W.2d at 750 (holding that an accountant's constitutional challenge of the South Dakota Board of Accountancy's quality review was not ripe because "his constitutional challenge to that statute was dependent upon the future occurrence of conduct and events that were uncertain and unknown." As such, there was "was no real, present or imminent controversy presented[.]"). However, once Providers request to participate as panel providers of the TRUE Plan and Tier 1 of the PLUS Plan, they must be considered and offered terms and conditions for participation.

[¶29.]     The circuit court did not err in granting Providers' motion for summary judgment and declaring that pursuant to SDCL 58-17J-2, SHP may not exclude a qualified and willing provider from participating as a panel provider in either the TRUE Plan or Tier 1 of the PLUS Plan. The possibility that SHP or a particular Provider are unable to agree to the specific terms and conditions to provide health services under SHP's plans do not, on this record, preclude a judicial declaration concerning the meaning of SDCL 58-17J-2. SHP may not exclude Providers from participating in their plans except for the reasons specified in the statute. The

-14-

circuit court did not err in granting summary judgment on the application of SDCL 58-17J-2 to the SHP's TRUE Plan and PLUS Plan.

[¶30.]     We affirm.

[¶31.]     KERN, DEVANEY, and MYREN, Justices, and LOVRIEN, Circuit Court Judge, concur.

[¶32.]     LOVRIEN, Circuit Court Judge, sitting for SALTER, Justice, who recused himself and did not participate.