#29961-a-JMK
**2023 S.D. 29**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                      Plaintiff and Appellee,

    v.

NASTASSA L. DUTTON,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GREGORY J. STOLTENBURG
Judge

\* \* \* \*

MANUEL J. DE CASTRO, JR.
Sioux Falls, South Dakota                    Attorney for defendant
                                            and appellant.

MARTY J. JACKLEY
Attorney General

JONATHAN K. VAN PATTEN
Assistant Attorney General
Pierre, South Dakota                         Attorneys for plaintiff
                                            and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 21, 2023
OPINION FILED **06/28/23**

#29961

KERN, Justice

[¶1.]		After a bench trial, Nastassa L. Dutton was convicted as an accessory to aggravated assault for intentionally harboring or concealing a juvenile in the commission of a felony.  Dutton appeals, arguing that she cannot be convicted as an accessory to a felony because the principal was a juvenile subject to a delinquency adjudication, rather than a criminal prosecution, which could result a felony conviction.  Without a criminal prosecution, Dutton contends she cannot be an accessory to a felony.

## Facts and Procedural History

[¶2.]		In April 2019, N.I., age 15, along with three other individuals, was captured on video assaulting another juvenile.  Four days later, the Brookings County state's attorney filed a petition against N.I., alleging he was a juvenile delinquent for committing the offense of aggravated assault under SDCL 22-18-1.1(4). At the State's request, the circuit court issued a warrant for his arrest. Dutton was listed on the warrant as N.I.'s guardian because law enforcement believed N.I. was living with Dutton's family at the time.  Unable to immediately apprehend N.I., law enforcement personnel, including the Brookings County Sheriff's Office and Brookings school resource officers, made several unsuccessful trips to Dutton's house in an attempt to locate and arrest N.I.  Additionally, Detective Joel Perry of the Brookings Police Department testified to having several encounters with David Olsen, Dutton's partner, throughout the summer of 2019, during which Detective Perry reminded Olsen about N.I.'s outstanding warrant.

-1-

[¶3.]     Sometime after the assault took place, but before police could arrest N.I. on the warrant, he and Dutton's seventeen-year-old daughter, N.J., ran away to Portland, Oregon, where they lived during the summer of 2019. Worried about her daughter's wellbeing, Dutton encouraged her to move back to South Dakota. Dutton promised her daughter that if she agreed to move back, Dutton and Olsen would provide her with an apartment. N.J. agreed to move home if N.I. could accompany her. Not wanting to lose her daughter, Dutton agreed but told N.I. that he would have to turn himself in and take care of his warrant upon his return. According to testimony later elicited at Dutton's trial, Dutton and N.I. agreed that he would turn himself in on Monday, September 30, 2019. Dutton explained that they chose Monday because juvenile court is held in Brookings on Tuesdays.

[¶4.]     On Friday, September 27, 2019, Dutton posted a video to Facebook depicting herself driving a car full of young people destined for the Brookings Bobcats' homecoming football game. The video depicts N.I. among Dutton's passengers. The next day, while at Dutton's house, N.I. and Justin Proctor, Dutton's half-brother, got into an argument that led to a physical altercation during which N.I. stabbed Justin in the stomach, mortally wounding him.[1]

[¶5.]     Following the altercation, law enforcement officers conducted investigative interviews with Dutton and N.I. The Brookings County Sheriff's Office interviewed Dutton on two occasions, once by Deputy Dane Larson and again

---

1.    N.I. later admitted to a petition alleging he was a juvenile delinquent for having committed the offense of first-degree manslaughter.

by Deputy Darin Haider.[2] During the course of law enforcement's investigation, Detective Perry was informed of Dutton's Facebook video showing her driving around Brookings with N.I. the day before the deadly incident. After determining that the video was evidence of Dutton's failure to turn N.I. in on the April 2019 arrest warrant, Detective Perry provided a copy to the Brookings County State's Attorney's Office. On October 18, 2019, a Brookings County grand jury indicted Dutton for accessory to a crime in violation of SDCL 22-3-5, a class 5 felony, for harboring or concealing N.I. from arrest on the juvenile delinquency warrant.

[¶6.]     Dutton waived her right to a jury trial, and the circuit court held a bench trial on February 17, 2022. At trial, the State called Detective Perry and former Deputy Sheriff Darin Haider. Detective Perry described his attempts to locate N.I. on the delinquency warrant. He also described his discovery of Dutton's Facebook video, a copy of which was offered and received into evidence. Deputy Haider testified about his interview with Dutton, which was also admitted into evidence.

[¶7.]     After the State rested its case, Dutton moved for a judgment of acquittal, arguing that the State failed to prove she had the specific intent to act as an accessory. Further, Dutton argued she could not have committed the crime because N.I. was charged as a juvenile under the rules of civil procedure and therefore did not commit the principal felony necessary to sustain the charge. The

---

2.     At trial, portions of both interviews were played for the circuit court, and the recordings were introduced into evidence. Deputy Larson was not called to testify, and former-Deputy Haider acknowledged that he could not speak accurately as to the substance of Dutton's first interview.

circuit court denied Dutton's motion, finding, based on Dutton's own admissions, that there was sufficient evidence to conclude she knew of N.I.'s warrant when he returned to Brookings. The court noted it was apparent that she knew of his warrant when she appeared in and posted the Facebook video showing herself driving him around town on September 27. The circuit court also rejected, as meritless, Dutton's argument that a party could not serve as an accessory to the commission of a felony if the felonious conduct was committed by a juvenile charged as such in juvenile court. The court concluded that the statute requires rendering assistance to another to prevent the detection or apprehension of one engaged in the *commission* of a felony, not one who has been *convicted* of a felony. To decide otherwise, the court stated, "would frustrate the policy and intent of the statute."

[¶8.] Dutton testified on her own behalf at trial. She admitted that N.I. was in the car with her on September 27 and explained that she did not contact law enforcement because she intended to make N.I. turn himself in the following Monday. Dutton also testified that she did not conceal N.I.'s presence in Brookings from law enforcement. She stated that N.I. was not hidden away—he moved throughout the community freely. Dutton pointed to the September 27 video, which she posted publicly, as evidence of her lack of intent to obstruct law enforcement's apprehension of N.I.

[¶9.] However, on cross-examination, Dutton admitted to providing N.I. with assistance and agreeing to a plan that delayed law enforcement's apprehension of him. When asked whether she agreed to N.I. waiting until Monday, September 30 to turn himself in, Dutton answered, "Correct." And when asked whether that

plan delayed N.I.'s apprehension, Dutton answered that it did. Dutton also admitted to knowing that N.I. was living in the apartment provided by her and Olsen.

[¶10.] At the conclusion of the trial, the circuit court found Dutton guilty as an accessory under SDCL 22-3-5 for "delay[ing] the apprehension of another person for the commission of a felony by harboring or concealing that person." The court ordered a presentence investigation and scheduled a sentencing hearing. After considering the parties' arguments, the court sentenced Dutton to serve four years in the penitentiary, all suspended on the condition that she comply with a three-year probationary term, which included a requirement that Dutton serve 20 days in the Brookings County jail. Dutton appeals from the circuit court's verdict raising a single issue—whether she could be convicted as an accessory to the commission of a felony when the principal offender is a juvenile charged as a delinquent rather than as a felon in adult court.[3]

### Analysis and Decision

[¶11.] The crime of accessory originated under the common law. At common law, an individual or group of individuals who played a part in the commission of a crime were classified into one of four categories: "(1) principals in the first degree; (2) principals in the second degree; (3) accessory before the fact; (4) and accessory after the fact." 2 Subst. Crim. L. § 13.1 (3d ed.) Westlaw (database updated Oct.

---

3. Initially, Dutton raised the sufficiency of the evidence as the primary issue in her appeal. However, in her reply brief, Dutton acknowledges that the only issue before this Court is "whether she can be convicted as an accessory to a felony act by a principal who is a juvenile," which is a question of law.

2022); *see generally* SDCL 22-3-3.1. Each classification depended on the party's relationship to the crime. For example, an individual who aided or encouraged the commission of a criminal act, but was absent when it was committed, fell within the "accessory before the fact" category. 2 Subst. Crim. L. § 13.1(c). Conversely, an accessory after the fact is a party who, knowing a felony has been committed, helped the principal, the individual who committed the crime, in a way that obstructs justice. *See* SDCL 22-3-5.

[¶12.] Like most other states, South Dakota has abrogated the common-law distinction between principals in the first degree, principals in the second degree, and accessories before the fact. SDCL 22-3-3.1 ("The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated."); *see Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189, 127 S. Ct. 815, 820, 166 L. Ed. 2d 683, 691 (2007) (noting that all jurisdictions in the country have abrogated the distinction between second-degree principals and accessories before the fact). However, South Dakota continues to recognize the offense of accessory to a crime if one renders assistance to an individual involved in the commission of a felony. SDCL 22-3-5.

[¶13.] Originally, successful prosecution of the accessory depended on successfully prosecuting and convicting the principal. Rollin M. Perkins, *Parties to Crime*, 89 U. Pa. L. Rev. 581, 611 (1941). And the accessory was given the same sentence as the principal. *Id.* at 613. The severity of punishment for the crime of accessory was later lessened to account for the reality that an accessory did not participate in the actual commission of the principal felony offense. 2 Subst. Crim.

L. § 13.1. Instead, the accessory engaged in a separate act that obstructed the principal's apprehension, conviction, or punishment, thereby endangering the public by subjecting them to the possibility of further harm from the principal.

[¶14.] Like most jurisdictions, South Dakota supplanted the common-law rule by statute. *See* SDCL 22-3-5. In doing so, the Legislature defined the crime of accessory as a distinct offense carrying a separate, often less severe punishment than the principal felony. *Id.* As SDCL 22-3-5 provides, a person commits the crime of accessory if they harbor and conceal an individual who committed a felony, and they did so intending to delay that person's apprehension:

> [a] person is an accessory to a crime, if, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of another *for the commission of a felony*, that person renders assistance to the other person. There are no accessories to misdemeanors. The term, render assistance, means to: (1) Harbor or conceal the other person; (2) Warn the other person of impending discovery or apprehension, other than a warning given in an effort to bring the other person into compliance with the law; (3) Provide the other person with money, transportation, a weapon, a disguise, or any other thing to be used in avoiding discovery or apprehension; (4) Obstruct anyone by force, intimidation, or deception in the performance of any act which might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of the other person; or (5) Conceal, destroy, or alter any physical evidence that might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of the other person. A violation of this section is a Class 5 felony.

(Emphasis added.)

[¶15.] On appeal, Dutton argues that she could not have committed the crime of accessory because no felony had been committed. She contends a juvenile does not commit a felony unless and until they are charged and prosecuted in adult court. As support, she asserts that an act charged under the juvenile code cannot be

a felony because juvenile proceedings are civil in nature, result in delinquency adjudications and dispositions, and do not affix criminal responsibility, guilt, or punishment.[4]

[¶16.] In response, the State argues that SDCL 22-3-5's text necessitates only that an individual render aid to a person who committed some act that South Dakota law defines as a felony. The State further asserts that the accessory may be prosecuted and convicted regardless of the status or legal outcome of the principal offender. For support, the State points to SDCL 22-3-5.1's plain language, which provides, "An accessory to the commission of a felony may be prosecuted, tried, and punished, even if the principal is not prosecuted or tried, or even if the principal was acquitted."

[¶17.] Therefore, the question before this Court is whether SDCL 22-3-5's "commission of a felony" element can be satisfied by criminal acts committed by a juvenile. This question is one of statutory interpretation and application, which we review de novo. *State v. Goulding*, 2011 S.D. 25, ¶ 5, 799 N.W.2d 412, 414. "The purpose of statutory interpretation is to discover the Legislat[ure's] intent." *State v.*

---

4. Dutton also argues that N.I. did not commit a crime because a juvenile charged with aggravated assault, a class 3 felony, cannot be directly charged in or transferred to adult court. However, her argument rests on an erroneous reading of SDCL 26-11-4. Despite counsel's argument, N.I.'s aggravated assault charge was eligible for transfer to adult court, and, had a petition to transfer been filed, the court would have considered whether to exercise its discretion in accordance with SDCL 26-11-4 and allow the transfer. Indeed, any child 10 years old or older who commits an act defined as a felony is *eligible* to be transferred to adult court. SDCL 26-11-4; *see* SDCL 22-8C-2; SDCL 22-3-1; Wendy N. Hess, *Kids can Change: Reforming South Dakota's Juvenile Transfer Law to Rehabilitate Children and Protect Public Safety*, 59 S.D. L. Rev. 312, 318 (2014).

*Bryant*, 2020 S.D. 49, ¶ 20, 948 N.W.2d 333, 338 (citation omitted). When interpreting a statute, we must always start with the language itself. *Id.* (citation omitted). "[W]e give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject." *State v. Hatchett*, 2014 S.D. 13, ¶ 11, 844 N.W.2d 610, 614 (citation omitted). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* (citation omitted).

[¶18.]     While we have not previously considered this question, the plain meaning of SDCL 22-3-5's text is evident. An individual commits the crime of accessory if, while having the requisite specific intent, the individual renders assistance to a person who has engaged in acts that constitute a felony. Further, as provided in SDCL 22-3-5.1, the accessory's liability does not hinge on the legal status or adjudicatory outcome of the principal: "An accessory to the commission of a felony may be prosecuted, tried, and punished, even if the principal is not prosecuted or tried, or even if the principal was acquitted." Therefore, it is not the principal's legal status or the existence of a prosecution that satisfies the "commission of a felony" element. Rather, it is the factual nature of the principal's act or omission that gives rise to the accessory's criminal liability. Here, Dutton does not dispute that the alleged *acts* underlying N.I.'s juvenile arrest warrant constituted an aggravated assault, a felony as defined under SDCL 22-18-1.1(4).

[¶19.]     Furthermore, the fact that a juvenile's felonious conduct is being addressed under the juvenile code does not, nor was it intended to, shield adults

from liability for an independent criminal offense that involves a minor's illegal conduct. To construe the juvenile code and SDCL 22-3-5 as Dutton suggests, would undermine the statute's purpose of promoting public safety. As well illustrated by the facts before us, one who harbors or conceals a person after they commit a felonious act, regardless of said person's age, embarks on a dangerous course that may endanger the community.

[¶20.]　　　　Other jurisdictions have come to the same conclusion when faced with a similar question. New Mexico criminalizes harboring and aiding a felon "who knowingly conceals any offender or gives such offender any other aid, knowing that he has committed a felony[.]" N.M. Stat. Ann. § 30-22-4. In *State v. Contreras*, 41 P.3d 919, 921 (N.M. App. 2002), the defendant argued that she could not be guilty of harboring and aiding a felon because the alleged offender was a juvenile who could be adjudicated only as a delinquent offender rather than a felon. The New Mexico Court of Appeals held that § 30-22-4 includes "principals who are juvenile offenders who have committed an offense punishable as a felony notwithstanding the fact that such offense is referred to as a delinquent act under the [juvenile] code." *Contreras*, 41 P.3d at 923. The court declined to construe the statute to exclude juveniles because it would undermine the statute's purpose of protecting society from the danger associated with harboring, protecting, and aiding individuals who have committed felonious acts. *Id.* at 922. As a result, the court construed "'any offender' to include a juvenile offender and 'felony' to mean a crime defined in law as a felony." *Id.* at 922.

[¶21.] Courts from other jurisdictions, including Oregon, Mississippi, Kansas, California, and Oklahoma, have reached the same conclusion when interpreting similar statutes. *See State v. McCullough*, 220 P.3d 1182, 1187 (Or. 2009) ("[I]f a person engages in conduct that is classified, by statute, as a felony, that person commits 'a crime punishable as a felony,' whether or not that person is actually punished for committing a felony."); *Dobbs v. State*, 726 So. 2d 1267, 1275 (Miss. Ct. App. 1998) (holding that a juvenile's adjudication as a delinquent does not prevent an adult from being convicted as an accessory because the juvenile still committed the act of burglary); *State v. Buss*, 847 P.2d 1304, 1306 (Kan. 1993) (interpreting "person 'who committed a felony'" to include "juveniles who commit felonious acts"); *Shockley v. State*, 724 P.2d 256, 258 (Okla. Crim. App. 1986) ("The fact that our Juvenile Code (Title 10) classifies a particular principal as a delinquent instead of a felon will not allow the accessory to avoid the illegality of his own act."); *Shortridge v. Municipal Court*, 198 Cal. Rptr. 749, 750–51 (Cal. Ct. App. 1984) (holding that "all minors 14 years of age and older are capable of committing felonies[,]" and "anyone who, with the requisite intent and knowledge, harbors, conceals or aids these youthful principals after the commission of a felony is guilty of being an accessory."); *State v. Truesdell*, 620 P.2d 427, 429 (Okla. Crim. App. 1980) ("The fact that the principal is a minor goes to his legal status, not his factual status, and it is immaterial as to the guilt or innocence of the defendant on the charge of accessory after the fact."); *but cf. Frost v. State*, 527 N.E.2d 228, 229 (Ind. Ct. App. 1988) (holding that a juvenile's actions did not constitute a crime in the wake of a legislative revision that struck "whoever harbors or conceals a boy or girl, under

eighteen (18) years of age fleeing from . . . a charge of delinquency" from the accessory statute).

[¶22.] Accordingly, we hold that an individual may be prosecuted, tried, and punished as an accessory to a crime under SDCL 22-3-5 when the principal felony is based on the act of a juvenile, regardless of the existence or status of any prosecution against the juvenile. The circuit court did not err in concluding Dutton's conduct violated the provisions of SDCL 22-3-5. We affirm.

[¶23.] JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.