#30810-r-PJD
**2025 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THE PEOPLE OF THE
STATE OF SOUTH DAKOTA
IN THE INTEREST OF J.W., child,
and concerning A.B., Respondent.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE STACY L. WICKRE
Judge

* * * *

OLE J. OLESEN of
Pennington County Public
  Defender's Office
Rapid City, South Dakota                    Attorneys for appellant J.W.


MARTY J. JACKLEY
Attorney General

ANGELA R. SHUTE
Assistant Attorney General
Pierre, South Dakota                        Attorneys for appellee State of
                                            South Dakota.

* * * *

                                            ARGUED
                                            APRIL 30, 2025
                                            OPINION FILED **07/16/25**

#30810

DEVANEY, Justice

[¶1.]       J.W. and two other juvenile boys were involved in an incident in which one of the other boys exploded a large firework inside a vacant trailer home in their neighborhood, resulting in significant fire and smoke damage to the trailer.  When questioned by police, J.W. initially lied about who caused the fire in order to protect the other juveniles involved.  J.W. admitted to a juvenile delinquency petition alleging accessory to a crime.  One of the juveniles paid a portion of the restitution for the damage to the trailer, and the circuit court ordered J.W. and the third juvenile to pay the balance of the restitution amounting to approximately $15,000.  On appeal, J.W. challenges the restitution order.  We reverse.

### Factual and Procedural Background

[¶2.]       On July 5, 2023, law enforcement and firefighters responded to a structural fire at a residential trailer park off Sturgis Road near Black Hawk, South Dakota.  Upon their arrival, they saw a vacant trailer home with black smoke billowing out the windows and door.  Law enforcement officers spoke to a woman standing outside with juvenile boys.  She said she was the one who called 911 after the boys knocked on her door and reported the fire.  Two of the boys, 14-year-old J.W. and 15-year-old S.E., were interviewed by law enforcement on the scene; a third boy, 14-year-old D.B., had left when his father picked him up soon after the deputies arrived.

[¶3.]       J.W. told the officer that he saw two kids running away from the trailer and up the hill.  He described one as about ten years old and wearing cargo shorts, and described the other as a tall kid wearing a white hoody.

[¶4.]     While on the scene, law enforcement interviewed another woman who lived in the trailer park. She had witnessed three juvenile boys go into the trailer and then she heard an explosion. She also saw the boys run away and attempt to hide, then return to the trailer. When they opened the door, black smoke came out. She watched the boys throw something into a trash can, then saw them approach the trailer where the 911 caller lived. This witness showed law enforcement a video she had recorded on her cellphone, as well as a video captured on her home security camera, that showed J.W., S.E., and D.B. engaging in these events.

[¶5.]     The next day, law enforcement separately interviewed the three boys about the fire, as documented by law enforcement reports in the record. During his interview, J.W. stated that he was with S.E. and D.B. and they had fireworks. According to J.W., at some point S.E. said he had an idea. S.E. took a mortar firework, walked over to the trailer which he knew to be vacant, and kicked in the front door. J.W. claimed that he and D.B. were telling S.E. not to do it. All three boys entered the trailer. J.W. said that S.E. lit the mortar and threw it toward the refrigerator in the kitchen, after which the boys ran out of the trailer and continued running. They returned and saw the trailer was on fire. At that point, S.E. told them to throw the fireworks in the trash can and not say anything, and he devised a plan for them to say that two unknown boys were responsible for the fire. The boys then knocked on the neighbor's door and asked her to call 911. J.W. stated that when he talked to law enforcement on the scene the day before, he lied because he was afraid S.E. would beat him up.

[¶6.] During their interviews, D.B. and S.E. each provided a version of the events consistent with what J.W. explained, although D.B. and S.E. both tried to minimize some of their own involvement. S.E. admitted that he was the one who lit the firework inside the trailer.

[¶7.] The State filed juvenile delinquency petitions against all three juveniles. In J.W.'s case, the petition alleged second degree burglary as well as aiding and abetting reckless burning or exploding. Thereafter, an amended petition was filed alleging that J.W. had committed one count of accessory to a crime under SDCL 22-3-5(4).[1] Upon J.W.'s admission to the amended petition, the court adjudicated him to be a delinquent child. On March 28, 2024, the circuit court entered a dispositional order placing J.W. on four months of probation and imposing other conditions. The court set an evidentiary hearing to address restitution.

[¶8.] Only J.W. and S.E. participated in the joint restitution hearing held on June 4, 2024, as D.B.'s case was dismissed pursuant to an agreement he reached with the State wherein he agreed to pay $9,086.75 in restitution. At the hearing, the State presented evidence that, as a result of the fire and smoke, the trailer

---

1. SDCL 22-3-5(4) provides:

> A person is an accessory to a crime, if, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of another for the commission of a felony, that person renders assistance to the other person. . . .
>
> The term, render assistance, means to:
> . . .
> > (4) Obstruct anyone by force, intimidation, or deception in the performance of any act which might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of the other person[.]

sustained significant damage and was uninhabitable until repairs could be completed. It was not insured. The trailer owner, as well as his contractor who was still doing the repairs, testified regarding the damage and the cost of repairs. The owner also claimed an amount for lost rental income, as he had purchased the trailer to be used as rental property and had been unable to do so while repairs were being made. J.W. did not testify, but his mother testified about their living situation and her income, debts, and household expenses, as well as J.W.'s job prospects in the area.

[¶9.] Following the hearing, both parties submitted briefs to the court. J.W. first argued that he should not be required to pay any restitution because there was no causal connection between the damages suffered by the trailer owner and the conduct for which J.W. was adjudicated—i.e., his lying to police about seeing two other kids run away from the trailer, in his effort to protect S.E. and D.B. He acknowledged older cases from this Court that held such a causal connection need not be shown in juvenile delinquency cases. *See People ex rel. K.K.*, 2010 S.D. 98, ¶ 12, 793 N.W.2d 24, 28; *see generally In re M.D.D.*, 2009 S.D. 94, ¶ 5, 774 N.W.2d 793, 795 (holding that adult restitution statutes are inapplicable to juvenile proceedings). But he claimed those cases were no longer valid in light of subsequent legislative amendments made in 2016 to the juvenile statutes regarding restitution. He pointed to the amendment's cross-reference to the criminal restitution statute applicable to cases involving adults and argued that case law interpreting that statute requires a causal connection to be shown before restitution may be ordered. J.W. further argued that, if restitution were imposed, the court should limit the

amount ordered to avoid creating serious hardship or injustice to J.W. and his mother, who he claimed would realistically be the likely source for the payments.[2] J.W. also challenged some of the amounts claimed as damages.

[¶10.]     In its brief, the State requested a restitution award of $30,013.25, imposed jointly and severally upon J.W. and S.E. This included the victim's request for lost rental income but excluded the amount already paid as restitution by D.B. Although the State likewise noted the legislative amendments to the juvenile statutes regarding restitution, it disagreed with J.W.'s interpretation of the amendments. It argued that the prior cases remained good law and, accordingly, under those cases no causal connection need be shown. In the alternative, the State argued a causal connection existed under the facts of the case. The State further contended that J.W. failed to show how *he* would incur serious hardship or injustice by an order of restitution.

[¶11.]     The circuit court entered a written restitution order in a memorandum that detailed its findings and analysis of the statutes and case law governing juvenile restitution. The court analyzed the legislative changes to the statutes governing dispositions in juvenile delinquency cases (SDCL 26-8C-7) and in cases involving children in need of supervision (CHINS) (SDCL 26-8B-6). In the court's view, *K.K.'s* holding that no causal connection need be shown in juvenile

---

2.     J.W. argued that any restitution award should not exceed $2,500, citing SDCL 25-5-15. That statute addresses parental liability for damage caused by willful acts of a minor child and caps the amount recoverable in a civil suit against the parents at $2,500. The circuit court ruled that this statute did not apply to the question of restitution in a delinquency proceeding against a juvenile. J.W. does not challenge the court's ruling on appeal.

delinquency cases was still valid, even after the legislative amendments. Thus, the court applied the broad principles governing juvenile proceedings announced in *K.K.* that related to the "guidance, control, or rehabilitation" of delinquent children, and concluded that it was in J.W.'s "best interest" to require him to pay restitution. The court made this ruling after noting that S.E. admitted to second degree burglary and J.W. admitted to being an accessory to a crime, finding that both juveniles "had 'some involvement in the crime' that caused near total destruction of the trailer home[.]"

[¶12.] Additionally, the court determined it was "reasonably satisfied" that the purposes of affording "guidance, control, or rehabilitation" were served by using the cost of repair of the trailer home as the appropriate measure of damages, which it found to be $24,700 based on the evidence. The court declined to include restitution for the claimed lost rental income after determining it was "unclear what damages [the victim] suffered for lost rents." Subtracting approximately $9,000 that D.B. had already paid in restitution, the court found J.W. and S.E. jointly and severally liable for $15,613.25 in unrecovered damages. In this regard, the court found that "the delinquent act in this case was quite serious, . . . the destruction caused by the actions of [J.W.] and the other minor children was significant[,]" and that "the actions of [J.W.] and the other minor children were extremely reckless and dangerous." The court found that requiring restitution in the amount imposed would "serve a rehabilitative purpose and help the children understand the gravity of the harm they caused and the danger of such reckless conduct."

[¶13.]     The court also found there was "no credible evidence" that the restitution order would cause J.W. serious hardship.  Noting his mother's testimony about her financial situation, the court found the testimony was offered in relation to J.W.'s assumption that his mother would ultimately be financially responsible for the restitution.  But, the court explained, the juvenile restitution statute speaks in terms of the *child* paying restitution, not the parent.  Based on the limited testimony from J.W.'s mother, the court found that J.W. was capable of earning income to apply toward restitution without impacting the family's ability to afford its household and living necessities.

[¶14.]     J.W. appeals the circuit court's restitution order, asserting the following restated issues:

> 1.     Whether the circuit court erred in ordering restitution without finding a causal connection between the victim's damages and J.W.'s criminal act.
>
> 2.     Whether the circuit court clearly erred in finding that J.W. would not suffer serious hardship from the order of restitution.

## Analysis and Decision

[¶15.]     As to the first issue, J.W. claims there is no causal connection between the offense for which he was adjudicated—accessory to a crime stemming from his act of lying to the police—and the victim's damages as a result of the trailer fire. On appeal, the State does not argue that a causal connection factually exists in this case.  Rather, the State argues, as the circuit court ruled below, that the causal connection requirement does not apply to restitution awarded in juvenile

delinquency adjudications. J.W. contends the circuit court erred in its ruling, and he seeks reversal of the court's restitution order.

[¶16.] Both sides point to a legislative amendment to the juvenile delinquency statute regarding restitution, SDCL 26-8C-7(1), and take opposite positions regarding the meaning of that amendment and whether it effectively abrogates certain prior cases from this Court involving juvenile restitution. This is, therefore, a matter of "statutory interpretation and application, which we review de novo." *State v. Dutton*, 2023 S.D. 29, ¶ 17, 993 N.W.2d 136, 141 (citing *State v. Goulding*, 2011 S.D. 25, ¶ 5, 799 N.W.2d 412, 414). But first it is necessary to discuss relevant case law and its connection to the statutes at issue.

*Prior restitution decisions*

[¶17.] In support of his causal connection argument, J.W. cites *State v. Joyce*, a restitution case involving an adult driver of a vehicle who accidently rear-ended another vehicle and then fled the scene. 2004 S.D. 73, 681 N.W.2d 468. He pled guilty to a charge of leaving the scene of an accident (hit and run), and the court ordered that he pay restitution for the other motorist's medical expenses and vehicle damages. Joyce appealed, claiming "he should not have been ordered to pay restitution" because the motorist's "damages were not caused by his leaving the scene of the accident, but rather by the accident itself." *Id.* ¶ 10, 681 N.W.2d at 469−70. This Court cited various provisions of SDCL chapter 23A-28, the chapter governing restitution to victims of crimes, after first recognizing that "[i]t is the policy of this state that restitution shall be made by each violator of the criminal laws to the victims of the violator's criminal activities to the extent that the violator

is reasonably able to do so." *Id.* ¶ 12, 681 N.W.2d at 470 (quoting SDCL 23A-28-1).

The Court noted, in particular, the definitions found in SDCL 23A-28-2:

> "Restitution" is defined as "full or partial payment of pecuniary damages to a victim." SDCL 23A-28-2. "Victim" is defined, in part, as "any person, as defined in subdivision 22-1-2(31), who has suffered pecuniary damages *as a result of* the defendant's *criminal activities*[.]" SDCL 23A-28-2(5). "Criminal activities" include "any crime for which there is a plea of guilty or a verdict of guilty upon which a judgment of conviction may be rendered and any other crime committed after June 30, 1979, which is admitted by the defendant, whether or not prosecuted." SDCL 23A-28-2(2). "Pecuniary damages" include "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium." SDCL 23A-28-2(3).

*Id.* (emphasis added). The Court held that "South Dakota's restitution statutes require a causal connection between a defendant's crime and a victim's damages." *Id.* ¶ 16, 681 N.W.2d at 471; *see also State v. Hofer*, 2008 S.D. 109, ¶ 28, 757 N.W.2d 790, 798 (noting that the causal connection requirement arises from the "as a result of" language in SDCL 23A-28-2(5)). Therefore, the Court reversed the restitution order after concluding that "Joyce's act of leaving the scene did not cause [the motorist's] injuries and resulting damages." *Joyce*, 2004 S.D. 73, ¶ 16, 681 N.W.2d at 471.

[¶18.] Here, J.W. argues that, like in *Joyce*, his after-the-fact act of lying to the police, which formed the basis for his admission to the amended petition, was not causally connected to the victim's damages that were a result of the entry into the trailer and S.E.'s lighting of the firework. The State, citing this Court's rulings in *M.D.D.* and *K.K.*, contends the circuit court correctly determined that the "causal connection" requirement has no application in juvenile delinquency proceedings.

[¶19.] In *K.K.*, the Court addressed this very issue. 2010 S.D. 98, 793 N.W.2d 24. In that case, several teenagers broke into a bar during the night, stole items, and caused significant damage to the building. K.K. was one of the juveniles involved, although she did not participate in the actual burglary. She was, however, involved in the planning of the break-in and told the others they should get a brick to break into the bar. Afterward, she either helped them load the stolen goods into the car or watched them being loaded. After K.K. later admitted to a juvenile delinquency petition alleging misprision of a felony, the court ordered her to pay restitution jointly and severally with the other juveniles. She appealed, alleging there was no causal connection between her misprision of a felony offense and the losses sustained by the bar owner as a result of the burglary. *Id.* ¶ 8, 793 N.W.2d at 27.

[¶20.] When considering the causation issue raised by K.K., we acknowledged *Joyce's* holding regarding the causal connection requirement in adult restitution cases, which we noted is derived from SDCL 23A-28-1 and the "as a result of" language in SDCL 23A-28-2(5). *Id.* ¶¶ 9−10 (citing *Joyce*, 2004 S.D. 73, ¶ 16, 681 N.W.2d at 471). However, we explained that "the terms of SDCL [chapter] 23A-28 do not 'have application in juvenile proceedings.'" *Id.* ¶ 11 (quoting *M.D.D.*, 2009 S.D. 94, ¶ 4, 774 N.W.2d at 794). In *M.D.D.*, this Court noted that the language used in the criminal restitution statutes contained terms applicable only to criminal cases involving adults, and not juvenile proceedings. 2009 S.D. 94, ¶ 4, 774 N.W.2d at 794. We further noted in *M.D.D.* that "the different language used in the criminal restitution statutes does not reflect legislative intent that the criminal

statutes (SDCL [chapter] 23A-28) apply to restitution in juvenile proceedings[.]" *Id.* ¶ 5, 774 N.W.2d at 795.

[¶21.]       Relying on *M.D.D.*, the Court determined in *K.K.* that the juvenile restitution statute then in effect "broadly authorized courts to order restitution in juvenile cases for 'any damage done to property.' There [was] no limiting or restricting language akin to the 'as a result of' language found in the adult restitution statutes."[3] *K.K.*, 2010 S.D. 98, ¶ 12, 793 N.W.2d at 28. *See M.D.D.*, 2009 S.D. 94, ¶ 6, 774 N.W.2d at 795 (noting that, unlike adult restitution statutes, the juvenile restitution statute contained "broad, unqualified language"). We explained that the different language used in the adult restitution statutes and the juvenile restitution statute indicated that "the Legislature intended a different analysis in juvenile cases." *K.K.*, 2010 S.D. 98, ¶ 11, 793 N.W.2d at 27−28. We noted that "the juvenile statutes do not require that restitution be strictly associated with the crime for which the juvenile has been adjudicated." *Id.* ¶ 12, 793 N.W.2d at 28. Thus, we held that in juvenile proceedings, no causal connection was required between the victim's damages and the juvenile's criminal activities. *Id.* After concluding that the best interests of a child could include imposing restitution "that is not strictly

---

3.     When *M.D.D.* and *K.K.* were decided, the juvenile delinquency disposition statute (SDCL 26-8C-7) authorized a court to impose the dispositions allowed in SDCL 26-8B-6, the statute governing adjudications of CHINS, which at the time provided in subsection (4): "The court may require the child to pay for any damage done to property or for medical expenses under conditions set by the court if payment can be enforced without serious hardship or injustice to the child[.]" *See* 2008 S.D. Sess. Laws ch. 139, §§ 1−2; *see also In re M.D.D.*, 2009 S.D. 94, ¶ 6 n.3, 774 N.W.2d 793, 795 n.3.

causally related[,]" we held that, because K.K. had "some involvement" in the crime, it was appropriate for her to make restitution.[4]  *Id.* ¶ 13, 793 N.W.2d at 29.

[¶22.]    Against this backdrop, the present case requires the Court to assess whether the holdings in *M.D.D.* and *K.K.* remain viable considering the Legislature's subsequent amendments to the juvenile restitution statute.

*Legislative changes to juvenile statutes*

[¶23.]    In 2015, the Legislature made significant changes to the juvenile justice statutes as part of a comprehensive reform act.  *See* 2015 S.D. Sess. Laws ch. 152.  While the act included a number of changes, of relevance to the issue here was the amendment of SDCL 26-8C-7, which provides disposition alternatives to a court in a juvenile delinquency proceeding.  The act struck the provision in SDCL 26-8C-7 that referred to SDCL 26-8B-6—the statute providing available disposition alternatives including juvenile restitution.  2015 S.D. Sess. Laws ch. 152, § 20.  That change appears to be inadvertent, as the Legislature enacted emergency legislation in 2016 to again amend SDCL 26-8C-7.  *See* 2016 S.D. Sess. Laws ch. 146.

[¶24.]    Of particular note, the 2016 legislation amended subsection (1) of the juvenile delinquency disposition statute, SDCL 26-8C-7, to add the following alternative available to the court: "The court may require the child to pay

---

4.    Alternatively, the Court determined that, factually, there was a sufficient casual connection in the case.  *Id.* ¶¶ 14−17, 793 N.W.2d at 29−30.  We rejected K.K.'s reliance on *Joyce*, noting that *Joyce* was distinguishable because, in that case, the defendant's crime of leaving the scene of an accident "was committed *after* the infliction of injuries" and therefore "[t]he damage was already done."  *Id.* ¶ 15, 793 N.W.2d at 29.

restitution, as defined in subdivision 23A-28-2(4) and under conditions set by the court, if payment can be enforced without serious hardship or injustice to the child[.]" 2016 S.D. Sess. Laws ch. 146, § 1. The 2016 legislation also amended SDCL 26-8B-6(4) in the CHINS chapter, eliminating the broad language referred to in *M.D.D.* and *K.K.* that allowed a court to require a child to pay "for any damage done to property or for medical expenses" and changing this statutory provision to read: "The court may require the child to pay restitution, as defined in subdivision 23A-28-2(4) and under conditions set by the court[,] if payment can be enforced without serious hardship or injustice to the child[.]" 2016 S.D. Sess. Laws ch. 146, § 7. Additionally, the 2016 legislation added a specific reference to restitution, "as defined in subdivision 23A-28-2(4)[,]" in two other juvenile statutes. 2016 S.D. Sess. Laws ch. 146, §§ 5−6 (amending SDCL 26-7A-129 and SDCL 26-7A-11, respectively).

*Application of current juvenile restitution statutes*

[¶25.]       In the present case, both parties and the circuit court agreed that, in a juvenile delinquency proceeding, SDCL 26-8C-7(1) allows a court to order restitution, as defined in SDCL 23A-28-2(4) as "full or partial payment of pecuniary damages to a victim[.]" The circuit court determined, however, that in its view, the Legislature's specific reference to subsection (4), but not to any other subsection, demonstrated an intention to "necessarily exclude" all other subsections in that chapter, including the definition of "victim" in SDCL 23A-28-2(5). The circuit court found it significant that the current juvenile restitution statute in the CHINS chapter, SDCL 26-8B-6, refers to "restitution, as defined in § *23A-28-2*," which the

court construed as the Legislature's intent to adopt this statute in its entirety.[5] (Emphasis added.) In the court's view, the Legislature's failure to do the same with regard to SDCL 26-8C-7 reflected an intent to not adopt the entirety of the adult restitution statutes for juvenile delinquency proceedings. Thus, because the court believed that the other definitions in SDCL 23A-28-2 did not apply to juvenile delinquency proceedings, it determined that *K.K.'s* holding remained valid. In other words, the court held that no "causal connection" need be shown, as restitution was not limited to damages occurring only "as a result of" or "strictly associated with" the crime for which the juvenile was adjudicated. *See K.K.*, 2010 S.D. 98, ¶ 12, 793 N.W.2d at 28.

[¶26.] On appeal, the State adopts a similar position as the circuit court and argues the Legislature intended to maintain a distinction between adult restitution and juvenile restitution, as reflected in *M.D.D.* and *K.K.* On the other hand, J.W. argues that the juvenile restitution statutes are clear, certain, and unambiguous, and the amendments evince the Legislature's intention to treat juvenile restitution the same way as adult restitution, thus abrogating this Court's contrary holdings in *M.D.D.* and *K.K.*

[¶27.] Despite the path that may have led to this point, a resolution of this issue is rather straightforward. The starting point, of course, is "an analysis of the statute's text." *In re Implicated Individual*, 2021 S.D. 61, ¶ 16, 966 N.W.2d 578,

---

5. In 2021, the Legislature amended SDCL 26-8B-6(4) to strike the reference to "subdivision 23A-28-2(4)" and replaced it with "§ 23A-28-2". This occurred when the Legislature made other changes to the CHINS statutes unrelated to the issue of restitution. *See* 2021 S.D. Sess. Laws ch. 120.

583.  We adhere to the rule that "the language expressed in the statute is the paramount consideration." *Puffy's, LLC v. Dep't of Health*, 2025 S.D. 10, ¶ 38, 18 N.W.3d 134, 145.  "When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *Implicated Individual*, 2021 S.D. 61, ¶ 16, 966 N.W.2d at 583.

[¶28.]        The language of SDCL 26-8C-7(1) now provides: "The court may require the child to pay restitution, as defined in subdivision 23A-28-2(4) and under conditions set by the court, if payment can be enforced without serious hardship or injustice to the child[.]"  Thus, in unambiguous terms, restitution in juvenile delinquency proceedings is defined as "full or partial payment of pecuniary damages to a victim[.]"  SDCL 23A-28-2(4).  But to understand the full import of that statute, the terms "pecuniary damages" and "victim" must also be given meaning.  Rather than applying the rest of the definitions in SDCL 23A-28-2 when addressing the question of whether causation must be shown, the circuit court relied instead on the broader principles announced in *M.D.D.* and *K.K.*, which interpreted the juvenile statutes as they existed prior to the amendments.  There are two problems with that approach.

[¶29.]        First, the circuit court's approach leaves an unnecessary void in the understanding of how to apply the definition of restitution.  Indeed, a court cannot address restitution without knowing who it applies to and what type of damages are

implicated. The State points to definitions of "victim" in other parts of the code.[6]

Ironically, the circuit court did just the opposite when assessing the *measure* of

damages to be imposed as restitution in this case. Instead of looking elsewhere, the

court applied the definition of "pecuniary damages" found in SDCL 23A-28-2(3)

when determining the amount of restitution, and rightly so.[7] Yet, the court refused

to apply the definition of "victim" in SDCL 23A-28-2(5) when considering whether a

causal connection with the delinquent act for which J.W. was adjudicated must be

established.

[¶30.] When a court applies the definition of "restitution" in SDCL 23A-28-

2(4), its consideration of the other definitions found within SDCL 23A-28-2 is not

---

6. The State cites SDCL 26-7A-36.1, which allows a victim of delinquent acts to attend juvenile hearings and which refers to two definitions of a "victim" found in statutes that apply in adult criminal proceedings. *See* SDCL 23A-28C-4 (defining a victim as "any person being the direct subject of an alleged act that would constitute . . . a violation of chapter 22-22"); SDCL 22-1-2(53) (defining a victim as "any natural person against whom the defendant in a criminal prosecution has committed or attempted to commit a crime"). The State notes in its brief that these definitions do not contain "the 'as a result of' language from SDCL 23A-28-2(5) that provides the causal connection requirement in adult restitution cases." It is not clear how this is helpful to the State's position, because the language in these definitions similarly contemplates a causal link with a defendant's criminal activities.

7. Notably, the definition of "pecuniary damages" in SDCL 23A-28-2(3), which the circuit court applied when determining the measure of damages, refers to those a victim could recover in a civil action against a defendant. Such recovery hinges on successfully proving the damages were caused by a defendant's acts or omissions. And in addition to citing SDCL 23A-28-2(3), the circuit court also noted the language of S.D. Const. art. VI, § 29(14) (Marsy's Law), which provides victims the "right to full and timely restitution in every case and from each offender for all losses suffered by the victim as a result of the criminal conduct and as provided by law for all losses suffered *as a result of delinquent conduct*[.]" (Emphasis added.) Such language mirrors the definition of "victim" in SDCL 23A-28-2(5) as one "who has suffered pecuniary damages as a result of the defendant's criminal activities[.]"

only logical but required. The definitions are prefaced with the introductory clause of SDCL 23A-28-2, which states: "Terms used by this chapter mean: . . . ." Thus, a court should follow the clear and unambiguous language of the statute and not look elsewhere for the meaning of the words. *See State v. Turner*, 2025 S.D. 13, ¶ 47, 18 N.W.3d 673, 689 (concluding that because the meaning of phrases in a statute is provided in the definitions statute, "there is no need to engage in statutory construction"); *see also N. Border Pipeline Co. v. S.D. Dep't of Rev.*, 2015 S.D. 69, ¶ 13 n.9, 868 N.W.2d 580, 584 n.9 ("[I]n declaring the meaning of a statute, a court is not free to disregard legislative definitions of words."). The circuit court therefore erred in not applying the definition of victim provided in SDCL 23A-28-2(5).

[¶31.] The second problem with the circuit court's approach is its reliance on *K.K.* for the principle that no causal connection is required for juvenile restitution. This Court's rationale in both *K.K.* and *M.D.D.* was dependent on an interpretation that the Legislature intended to treat juvenile restitution differently from adult restitution, and that "the terms of [chapter] 23A-28 do not 'have application in juvenile proceedings.'" *K.K.*, 2010 S.D. 98, ¶ 11, 793 N.W.2d at 27 (quoting *M.D.D.*, 2009 S.D. 94, ¶ 4, 774 N.W.2d at 794). Clearly, that is no longer the case, as the reference to SDCL 23A-28-2(4) is now explicit in several places in the juvenile statutes, and the broader juvenile restitution language referred to in those cases was eliminated by the Legislature. It is reasonable to assume that the changes to the statutes were made, at least in part, in response to this Court's decisions. "We presume the Legislature acts with knowledge of our judicial decisions." *AEG Processing Ctr. No. 58, Inc. v. S.D. Dep't of Rev.*, 2013 S.D. 75, ¶ 12, 838 N.W.2d

843, 848 (citation omitted). Moreover, the Court also "presume[s] that the Legislature changed the wording of the statute for a reason." *State v. Schroeder*, 2004 S.D. 21, ¶ 12, 674 N.W.2d 827, 831. For these reasons, we conclude that, because the underlying premise for *M.D.D.'s* and *K.K.'s* holdings—that the terms of chapter 23A-28 do not apply to juvenile proceedings—has changed, the holdings of those cases have been abrogated by the legislative amendments. We therefore apply the ruling we announced in *Joyce* to juvenile restitution determinations and hold that there must be a "causal connection" between the criminal act for which the juvenile was adjudicated and the victim's damages.

[¶32.] In applying the definition of "victim" in SDCL 23A-28-2(5) as a person "who has suffered pecuniary damages as a result of the defendant's criminal activities," we must, in turn, apply the definition of "criminal activities." This term is defined in SDCL 23A-28-2(2) as "any crime for which there is a plea of guilty or verdict of guilty upon which a judgment of conviction may be rendered and any other crime . . . which is admitted by the defendant[.]"

[¶33.] In the context of the juvenile proceeding here, the criminal activities would include any crime for which J.W. was adjudicated or that he admitted committing. J.W. admitted to being an accessory to a crime under SDCL 22-3-5(4). Because there is no transcript of the adjudication hearing in the record, the factual basis for the admission recited at the hearing is not available to this Court. Thus, we consider only the amended petition, which alleged that J.W.:

> did commit the public offense of ACCESSORY TO A CRIME, in
> that [he] did, with intent to hinder, delay or prevent the

> discovery, detection, apprehension, prosecution, conviction or
> punishment of S.E. . . . and D.B. . . . for the commission of a
> felony, render assistance to S.E. and D.B. by obstructing anyone
> by force, intimidation, or deception in the performance of any act
> which might aid in the discovery, detection, apprehension,
> prosecution, conviction, or punishment of S.E. and D.B., in
> violation of SDCL 22-3-5(4)[.]

This type of offense is often referred to as accessory after the fact. *See Dutton*, 2023 S.D. 29, ¶ 11, 993 N.W.2d at 140 ("[A]n accessory after the fact is a party who, knowing a felony has been committed, helped the principal, the individual who committed the crime, in a way that obstructs justice.").

[¶34.] Importantly, the only premise that can be gleaned from the existing record is that the accessory crime for which J.W. was charged and adjudicated was based on his initial lies to the police about allegedly seeing other kids running away from the scene.[8] Like in *Joyce*, this act of deception occurred *after* the damage to the trailer was done. The appellate record does not contain any admissions by J.W. to starting the fire or to aiding and abetting such acts. Therefore, because the

---

8. Although the parties' briefs submitted to the circuit court on the issue of restitution are not evidence, we note that both refer to J.W.'s admissions to deceiving law enforcement about who started the fire when discussing the factual basis for the accessory crime. The State's brief noted that J.W. *specifically* "admitted to concealing the other two juveniles' identities so they would not be discovered." Similarly, in J.W.'s brief, he admitted that he obstructed law enforcement by deception when he lied to them on the scene about two other alleged children running away from the trailer and up the hill. While the State made further arguments in its brief about J.W. going into the trailer and failing to take actions to minimize the damage after the fire was set, J.W. maintained, in his brief, that any other alleged involvement in the crime, outside of his admitted deception after law enforcement arrived, was disputed. He noted that prior to the parties reaching an agreement on the accessory charge, he had denied the second-degree burglary and aiding and abetting reckless burning charges in the initial petition and requested an adjudicatory hearing. These charges were eliminated in the amended petition.

#30810

damage to the trailer did not occur "as a result of" J.W.'s criminal act, he is not liable for restitution.

[¶35.] We reverse and vacate the circuit court's restitution order imposed as part of J.W.'s disposition. In light of our decision on this first issue, it is unnecessary to address the second issue.

[¶36.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.